UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

WALLACE CARTER-MITCHELL,

                    Petitioner,

     - against -

DUKE TERRELL, WARDEN

                    Respondent.

------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ **JAN 2 6 2017** ★

**BROOKLYN OFFICE**

**MEMORANDUM AND ORDER**

12-cv-2361 (SLT)

**TOWNES, United States District Judge,**

    *Pro se* Petitioner filed the instant petition pursuant to 28 U.S.C. § 2241 ("Section 2241")

against the warden of the Metropolitan Detention Center, Brooklyn, New York ("Respondent"),

challenging numerous disciplinary actions on due process grounds and requesting injunctive

relief as a result of an incident of alleged sexual assault. For the reasons set forth below, the

petition is **DENIED.**

## BACKGROUND

    Wallace Mitchell, federal inmate number 51443-060, ("Petitioner") was convicted by the

Superior Court of the District of Columbia on four charges, including First-Degree Murder. He

was sentenced in 1991, *inter alia*, to twenty years to life with a mandatory minimum of twenty-

five years. (Declaration of Kenneth Bork ("Bork Decl."), ECF No. 42 ¶ 3.) As of October 15,

2010, Petitioner was in custody at The United States Penitentiary in Lewisburg, Pennsylvania.

(*Id.*, ¶ 4.) On November 17, 2011, Petitioner was transferred to the Metropolitan Detention

Center in Brooklyn, New York ("MDC Brooklyn"), and then transferred again on April 13,

2012, to the Metropolitan Correctional Center in New York, New York ("MCC New York").

(*Id.*) Petitioner subsequently left MCC New York, transferring through the United States

Penitentiary Canaan in Waymart, Pennsylvania, and the Federal Transfer Center in Oklahoma

City, Oklahoma, before arriving at the United States Penitentiary in Florence, Colorado ("USP Florence"), on June 7, 2012. (*Id.*) Since filing the instant suit, Petitioner has been transferred to a facility in the District of Columbia. (*See* Mot. for Change of Address, ECF No. 59).

Petitioner is a serial litigant and has filed over 80 lawsuits against the Federal Bureau of Prisons ("BOP") and its personnel. (*Id.* ¶ 4). He has filed over 1,100 administrative remedy requests and appeals. (*Id.*) He files lawsuits under a handful of aliases, most often challenging disciplinary actions imposed during his lengthy tour of federal facilities—including most, if not all, of the prisons listed above. (*Id.*) All of his suits were dismissed and several resulted in sanctions for abuse of process and his identification as a violator of the Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104–134, 110 Stat. 1321 (1996), three-strike rule. *See, e.g.*, *Mitchell v. Daniels*, 06-cv-624-DRH, 2014 WL 1246735 (S.D. Ill., Mar. 24, 2014); *Gilbert-Mitchell v. Allred et al.*, 12-cv-1997-CMA-MJW (D. Colo, April 3, 2013); *Deen-Mitchell v. Bledsoe*, 548 Fed. Appx. 747 (3d. Cir. 2013); *Mitchell v. Howard*, 419 Fed. Appx. 810 (10th Cir. 2011); *Mitchell v. Nash*, 09-cv-371-OC-22GRL (MDFL, Oct. 14, 2009). As in each of those cases, and as explained below, Petitioner's instant claims lack merit.

## I.    The Instant Claims

Petitioner's instant Section 2241 action sets forth twenty-eight claims, all but one of which challenge prison disciplinary proceedings or sanctions he received while in custody. (Pet. for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Pet."), ECF No. 1 at 7-18.) Grounds 1, 2, 3, 12, 13, 14, 15, 16, 22, and 23 arise out of sanctions imposed by the Unit Disciplinary Committee ("UDC") following review of various Incident Reports documenting "non-severe" violations allegedly committed by Petitioner while in custody. (Declaration of AUSA Seth D. Eichenholz, ("Eichenholz Decl."), ECF No. 41, ¶ 25; Ex. 1-3, 12-16, 22-23); *see also* 28 C.F.R.

2

§541.7(f), *infra*. Grounds 4, 5, 6, 7, 8, 9, 10, 11, 17, 18, 19, 20, 21, 24, and 25 arise out of sanctions imposed by the Discipline Hearing Officer ("DHO"). (Eichenholz Decl., Ex. 4-11, 17-21, 24-25.; *see also* 28 C.F.R. §541.8). Ground 27 pertains to sexual assault allegations against a guard at MDC Brooklyn, which were investigated by the Office of the Inspector General, but have not resulted in any action. (Bork Decl., ¶ 9; Traverse and Mem. of L. in Supp. of Pet. for a Writ of Habeas Corpus and Mot. for Evidentiary Hearing ("Pet'r's Reply"), ECF No. 54, Ex. B). Petitioner alleges that a guard at MDC Brooklyn forcibly touched his penis without his consent and for the guard's own sexual gratification. (Pet. at 16). Petitioner has made virtually identical allegations against other guards at other facilities in prior Section 2241 suits. *See, e.g., Deen-Mitchell v. Bledsoe*, No. CIV.A. 1:10-2238, 2012 WL 4107233, at *2 (M.D. Pa. Mar. 28, 2012), *report and recommendation adopted*, No. 1:10-CV-2238, 2012 WL 4103930 (M.D. Pa. Sept. 18, 2012); *Deen-Mitchell v. Young*, No. 2:10 CV 411, 2011 WL 3625714, at *1 (W.D. La. Aug. 17, 2011). Ground 28 pertains to four Incident Reports from the time period he was housed at MDC Brooklyn. At the time Respondent filed his response to the Order to Show Cause, none of these four Incident Reports had yet resulted in any disciplinary action. (Mem. of L. in Resp. to the Order to Show Cause and in Opp'n to the Pet. for a Writ of Habeas Corpus ("Resp't's Opp'n"), ECF. No. 40 at 6; Bork Decl., ¶ 8.)

The Incident Report giving rise to Ground 26 does not appear to have resulted in any disciplinary action, and has been expunged from Petitioner's disciplinary record, as Petitioner acknowledges. (Bork Decl., ¶ 8; Pet'r's Reply at 47, 49.)

## II.    BOP Disciplinary Proceedings

As with most of Petitioner's prior suits, this action primarily challenges the validity of BOP disciplinary proceedings against him for his alleged misconduct. Those proceedings are

largely governed by BOP regulations and involve two potential levels of review. All disciplinary proceedings begin with an incident report in which a staff member documents the alleged misconduct. *See* 28 C.F.R. 541.5. Unless informally resolved, *id.*, and after staff investigation, the UDC initially reviews an incident report, *id.* at 541.7. The UDC may at that point—and without a hearing—sanction an inmate for all prohibited acts except for those of "High" or "Greatest" severity. *Id.* The UDC may impose all relevant sanctions "except loss of good conduct sentence credit, disciplinary segregation, or monetary fines," which are reserved for acts of High and Greatest severity. *Id.* at 541.7(f). Misconduct of High or Greatest severity is referred to the DHO for hearing. *Id.* at 541.7(a), (g). Prisoners at DHO hearings have the right to a staff representative, to appear, to present evidence, to call witnesses (in a limited manner), and to a written report documenting the DHO's decision, the evidence relied on, the sanctions imposed, and the reasons therefor. *Id.* at 541.7-541.8. The DHO may impose all enumerated sanctions, including loss of good-time credit, disciplinary segregation, and monetary fines. *Id.* at 541.8(g).

Of Petitioner's 26 disciplinary proceedings at issue here, 9 were resolved at the UDC level, 15 were resolved by the DHO after hearing, one referred to the DHO and resulted in neither hearing nor sanction, and one was expunged from Petitioner's record after administrative appeal. (*See* Eichenholz Decl., ¶¶3-27).

## II.      Parties' Contentions

Petitioner primarily alleges that his due process rights were violated by the various disciplinary proceedings that resulted in a variety of sanctions, including disciplinary segregation, loss of telephone privileges, loss of visiting privileges, loss of commissary privileges, loss of personal property privileges, and exclusion from "program participation." The

4

most severe sanction involved sixty days of administrative segregation. (*See, e.g.*, Eichenholz Decl., Ex. 10.) Petitioner also asserts that each time sanctions of any kind issued, he was effectively deprived of various types of "good time credit" owed to him pursuant to the District of Columbia law under which he was sentenced. (Pet., at 7-18). Petitioner also alleges that he was threatened with placement in a supermax facility and that his disciplinary proceedings were a pretext for such placement. (*Id.* at 8). And, as noted above, he alleges that a guard at MCC Brooklyn sexual assaulted him on several occasions.

Petitioner requests the following relief: (i) "an evidentiary hearing"; (ii) "restoration and/or vestment of all good-time credits"; (iii) "expungement of the incident reports listed herein, or, in the alternative, new hearings on all the incidents"; (iv) "a protective order and a restraining order" against the guard who allegedly assaulted him; (v) "a hearing on all pending disciplinary matters"; (vi) an injunction to prevent "any acts of retaliation" reasonably relating to allegations in the petition; (vii) any and all other relief deemed necessary; and (vii) "a declaratory judgment that Respondent violated [Petitioner's] Constitutional and statutorily protected rights." (Pet., at 18-19; Mot. For Leave to Suppl. Pet. With a Correction, ECF No. 15, April 22, 2013, at 2.)

Respondent contends that (i) Petitioner's 14th and 15th claims must be dismissed for failure to exhaust (Resp't's Opp'n at 9); (ii) Petitioner's 1st, 2nd, 3rd, 12th, 13th, 14th, 15th, 16th, 22nd, 23rd, 26th, and 27th claims are not cognizable under Section 2241 because they involve only non-custodial sanctions (*id.* at 11-12); (iii) that the majority of Petitioner's claims do not establish deprivation of a liberty interest sufficient to state a procedural due process claim, (*id.* at 13 -16); and (iv) in the alternative, if any sanctions had deprived Petitioner of a valid liberty interest, he first received all process due to him, (*id.* at 17-19). Regarding Petitioner's

27th claim (for sexual assault), Respondent contends that the claim is moot because Petitioner sought only injunctive relief and has since transferred to other facilities and away from the alleged aggressor. (*Id.* at 12-13.)

Petitioner's response is too diffuse to summarize in full, but the central arguments are as follows. Petitioner disputes that he was not deprived of liberty interest in his disciplinary proceedings. (Pet'r's Reply, 5-8). While he effectively concedes that he did not receive loss of good time credit as an express sanction, he nevertheless insists he lost good time credit (and was thereby deprived of a liberty interest) because "any finding of guilt for a disciplinary incident automatically triggers a forfeiture [of good time credit] for the month in which the disciplinary act occurs irregardless [sic] of whether it is a specific sanction . . . ." (*Id.* at 6.) Petitioner also contends that he was deprived of a liberty interest when placed in disciplinary segregation for what he alleges was a sum total of 730 days, (*id.* at 7), and sent to or "maintained at" a "supermax facility," (*id.* at 8). Petitioner also (i) disputes that he failed to exhaust any of the instant claims, contending that any failure to exhaust resulted from "direct interfer[ance] and impeding by the actions of the Government" or his own alleged mental illness, (*id.* at 11, 16-17) and (ii) summarily contends that the numerous incident reports were fraudulently "used to assign [him] to supermax" after he filed this suit, (*id.* at 21).

## DISCUSSION

### I. Claim Construction

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations and quotation marks omitted).

This standard also applies to *pro se* habeas petitions. *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008). Therefore, the instant petition will be "interpret[ed] to raise the strongest arguments that [it] suggest[s]." *Brownwell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted). This includes construing Petitioner's claims without regard to the labelling, but rather with attention to the relief sought. *Newman v. United States*, No. 08-CV-4988 (FB), 2009 WL 890637, at *1 (E.D.N.Y. Apr. 2, 2009) (*quoting Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997)).

Challenges to the execution of a prisoner's sentence, such as challenges to the conditions of confinement and to disciplinary sanctions, are properly brought pursuant to Section 2241. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004). Petitioner primarily seeks expungement of Incident Reports that resulted in numerous disciplinary sanctions, or new hearings on all the incidents, as well as injunctive relief and a declaratory judgment that his Constitutional rights were violated by the conditions of his confinement at MDC Brooklyn and other BOP facilities. Petitioner does not challenge the validity of his sentence, nor does he seek damages. The essence of the petition is that twenty-six disciplinary proceedings deprived him of good time credits and a liberty interest to be free of disciplinary segregation. These claims fairly relate to the conditions of Petitioner's confinement and are properly brought under Section 2241. *Newman*, 2009 WL 890637, at *1 (construing a Section 2255 petition challenging disciplinary actions that resulted in continued incarceration after prisoner's good conduct time release date as a Section 2241 petition). Section 2241 is the proper vehicle for challenges based on "computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions," *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir.2001), as well as challenges based on

due process, *see, e.g., Smith v. Menifee*, 02 Civ. 7630(LBS), 2003 WL 1872668 (S.D.N.Y. Apr. 10, 2003) (denying a Section 2241 habeas petition grounded in due process claims). The substance of the alleged assault claims, and the injunctive relief requested for that claim (protective order and restraining order), likewise implicate conditions of Petitioner's confinement. Allegations that a prison guard has had sexual contact with a prisoner that was unrelated to legitimate official duties implicates the 8th Amendment cruel and unusual punishment clause. *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015). And claims for relief from harsh conditions in violation of the 8th Amendment cruel and unusual punishment clause are properly brought under Section 2241. *Medina-Rivera v. Terrell*, No. 11-CIV-0734 (BMC), 2011 WL 3163199, at *1 (E.D.N.Y. July 26, 2011); *Bolling v. Terrell*, No. 10-CV-3594 (KAM), 2010 WL 5101074, at *1 (E.D.N.Y. Dec. 8, 2010).

Petitioner, who has extensive litigation experience and in many respects writes briefs rivaling those of practicing attorneys, clearly grasps the relevant legal framework and correctly asserted his claims under Section 2241. He does not assert claims for damages, nor could he, as he is undoubtedly aware. A petitioner's claim for money damages is not cognizable unless his detention has been officially invalidated, which is not the case here. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994); *Jones v. Wainwright*, 744 F.Supp.2d 341, 344 (D.D.C. 2010) (applying *Heck* to section 2241 petitions). Moreover, Petitioner appears to prudently avoid seeking that remedy in light of his well-established status as a "three-strike violator" under the Prison Litigation Reform Act (the "PLRA"), which absent extraordinary circumstances would prevent him from filing all but habeas suits without payment of full filing fees. *See, e.g., Deen-Mitchell v. Young*, No. 2:10 CV 411, 2011 WL 3625714, at *1 (W.D. La. Aug. 17, 2011).

8

## II. Mootness of 27th Claim for Injunctive Relief

Respondent correctly argues that Petitioner's 27th claim is moot. In that claim, he asserts that a MDC Brooklyn prison guard, one "L. Fontaine," forcibly "touched, caressed, and fondled Petitioner's penis and forcibly performed oral sex on [Petitioner] as a condition of Petitioner's placement in [disciplinary] segregation." (Pet'r's Reply at 17). The only relief sought in relation to this claim is injunctive: a "protective order . . . to prevent Prison Guard L. Fontaine from any contact with the Petitioner or his effects . . . ." (*Id.* at 19). While, as Petitioner correctly notes, the Court has jurisdiction over the majority of Petitioner's claims because a Section 2241 is properly brought against the person who has custody of the petitioner at the time of filing, *Rumsfeld v. Padilla*, 542 U.S. 426, 434-435, (2004), "an inmate's transfer from a prison facility [nevertheless] generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); *see also Jabarah v. Garcia*, No. 08CIV3592, 2010 WL 3834663, at *4 (S.D.N.Y. Sept. 30, 2010) (Section 2241 claims for injunctive relief against warden and official of facility where prisoner no longer resided were moot because petitioner "no longer has any need for injunctive relief with respect to conditions" there); *Allen v. Lindsay*, No. 09-CV-1283 KAM, 2010 WL 5067907, at *2 (E.D.N.Y. Dec. 7, 2010) (injunctive relief sought in Section 2241 petition mooted with transfer). Because Petitioner has long since transferred from MDC Brooklyn, his claims concerning Fontaine are therefore moot.

## III. Petitioner Does Not Establish Due Process Violations For His Twenty-Seven Remaining Claims

The remainder of Petitioner's claims are procedural Due Process claims. The Fifth Amendment provides that no person "shall be deprived of life, liberty, or property, without due

process of law." U.S. Const. amend. V. Unless a prisoner identifies an underlying deprivation of a constitutional right, a prisoner claiming a procedural due process violation must establish "(i) that the restraint about which he complains imposes an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life,' and (ii) that the state grants its inmates, by regulation or statute, a protected liberty interest in remaining free from that restraint." *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see also Williams v. Fischer*, No. 08-CV-413, 2010 WL 3910129, at *9 (N.D.N.Y. Aug. 17, 2010) adopted, 2010 WL 3893952 (N.D.N.Y. Sep. 30, 2010) ("To establish a protected liberty interest, a prisoner must satisfy the standard set forth in *Sandin*.") Therefore, in order to establish a violation of due process, a petitioner must first identify a valid liberty interest. *See Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) ("In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.") (citations and quotation marks omitted); *Hirsch v. Suffolk County*, No. 08-CV-2660, 2015 WL 1275461, at *9 (E.D.N.Y. Mar. 18, 2015) ("A prerequisite to Plaintiff's recovery against either the County or the State Defendants [for violation of his due process rights] is that Plaintiff must have been deprived of a property or liberty interest protected by the Constitution."); *Williams*, 2010 WL 3910129, at *9 ("As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property.")

Here, Petitioner contends that he was deprived of two primary liberty interests: good time credits and freedom from disciplinary segregation.[1] Both contentions rest on error. As explained

---

[1] To the extent Petitioner implicitly alleges he was denied due process in UDC proceedings, he fails to present a cognizable claim. The UDC only imposed sanctions limiting his telephone, commissary, visitation, and personal property privileges. (*See* Eichenholz Decl., Exs. 1-3, 12-16, 22). Such privileges are not cognizable under Section 2241 because they have only a "tangential and speculative" impact on

below, Petitioner was not deprived of a liberty interest in good time credits or in freedom from administrative segregation. Moreover, even if placement in segregation had deprived him of a liberty interest, he first received all process due to him.

### 1. *Petitioner was not deprived of a liberty interest in good-time credits*

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted); *see also Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) ("Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.' ") Where, as here, a petitioner asserts a liberty interest arising from state (or District of Columbia) law, the focus of the inquiry should be on the nature of the interest allegedly created by the state. *Sandin*, 515 U.S. 472, 479–83 (1995).

As many courts have recognized, prisoners have liberty interests in good time credits only if those credits have properly vested under state law. In *Wolff v. McDonnell,* the United States Supreme Court determined that there is no constitutional right to good time credits but that state law may independently create liberty interests in the same. 418 U.S. 539 (1974). The Court considered due process claims by prisoners who had earned a vested right to good time credits under Nebraska law and held that those prisoners could not be deprived of those credits without specific, minimum procedures required by the Due Process Clause of the Fourteenth amendment. (*Id.* at 554–57). However, as many courts have explained, prisoners have no liberty interest under *Wolf* in the mere opportunity to earn good time credits. *See Abed v. Armstrong,*

---

the imposition of future administrative sentences and, thus, are not "close to the core of habeas corpus." *Homen v. Hasty*, 229 F.Supp.2d 290, 295 (S.D.N.Y.2002). For this reason Petitioner's 1st, 2nd, 3rd, 12th, 13th, 14th, 15th, 16th, 22nd, and 23rd "grounds" in his petition do not comprise cognizable claims.

209 F.3d 63, 66–67 (2d Cir.2000) ("[a]lthough inmates have a liberty interest in good time credit they have *already earned* . . . , no such interest has been recognized in *the opportunity* to earn good time credit . . . .") (citation omitted). Likewise, there is no liberty interest where state law leaves final distribution of credits to the discretion of the custodian, *see Fogle v. Pierson,* 435 F.3d 1252, 1262 (10th Cir.2006) (finding no liberty interest implicated where good time credits were discretionarily awarded), or otherwise leaves the right to credits contingent, *see Sowell v. Chandler*, 13 Civ 290–Y, 2014 WL 169652, at *5 (N.D. Tex. Jan. 15, 2014) (denying a Section 2241 petition premised on unearned credits and noting "support for the proposition that [the] petitioner has no liberty interest in the 'mere opportunity to earn' GCT credits") (quoting *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995)); *Cardenas v. Wigen*, 921 F. Supp. 286, 292 (E.D. Pa. 1996 (claims concerning unvested credits rejected as "speculative."); *cf. Kerry v. Din*, 135 S. Ct. 2128, 2137 (2015) (good time credits at issue in *Wolf* were statutory "rights" and not an "expectation.").

Here, the record clearly demonstrates that Petitioner was not deprived of vested good time credits. Notably, Petitioner does not dispute that his DHO sanctions did not expressly deprive him of good time credits. (*See* Eichenholz Decl., ¶¶ 3-27, Exs. 1-25 (listing sanctions imposed, which do not include loss of sentencing credits)). Rather, Petitioner contends that each sanction indirectly cost him various sentencing credits under what he terms the "old, old law" in place at the time of his sentencing. Specifically, he contends that because he was sentenced for conduct occurring in 1989, under the District of Columbia Good Time Act, D.C. Code § 24-428 et .seq.) (the "DCGTA") (repealed Aug. 20, 1994), he:

> "earns Industrial Good time (IGT) if he works sufficient time in the industry; Educational Good Time (EGT) if he participates in significant educational programs; and Statutory Good time (SGT) mandated by statute for serving certain amounts of his sentence,

> under the "old, old law,"[2] any finding of guilt for a disciplinary
> incident, automatically triggers a forfeiture of IGT, EGT and SGT,
> for the month in which the disciplinary act occurred, irregardless
> [sic] of whether it is a specific sanction by the Disciplinary Hearing
> Officer (DHO). *See* D.C. Good Time Credits Act of 1987, D.C.
> Code §§ 24-428, 429 and BOP Program Statement 5884.02, and 28
> CFR § 523.30-33.

(Pet'r's Reply at 6). In so contending, Petitioner appeals to certain inmate-favorable sentencing

statutes previously in place in the District of Columbia. Although vague, if broadly construed

this contention entails two possible arguments: (1) that, by virtue of the authorities cited,

Petitioner's sanctions implicitly triggered forfeiture of credits he had already earned; or (2) that

his sanctions rendered him ineligible for programs and subsequently "earning" or otherwise

"completing" unvested credits under District of Columbia law. Both arguments lack merit.

To the extent Petitioner argues that the disciplinary sanctions indirectly deprived him of

vested credits, he fails as a factual matter to establish that he had any credits to lose. That is, he

provides no evidence and does not allege any facts establishing that he had ever actually earned

the credits he labels as "IGT," "EGT," and "SGT." Moreover, the authorities he cites would in

no way cause the deprivation of any vested credits he hypothetically had. BOP Program

Statement 5884.02, in particular, forecloses this argument. Section 8(e) makes clear that "[o]nce

appropriately awarded, [credit] vests, and *cannot be forfeited.*" Thus, the very authority that

Petitioner would claim causes forfeiture of his credits expressly *prohibits* their forfeiture.

Finally, to the extent Petitioner argues that his sanctions rendered him ineligible to earn credits,

he fails to assert a valid liberty interest because there is no liberty interest in eligibility to earn

---

[2] Petitioner's reference to the "old, old law" appears to be to the D.C. Good Time Credits Act enacted in 1987 and repealed in 1994. *See, e.g., Mitchell v. Daniels*, No. 3:06-CV-00624-DRH, 2014 WL 1246735, at *3 (S.D. Ill. Mar. 24, 2014) (where Petitioner made similar claims) *appeal dismissed* (Oct. 21, 2014).

credits under the DCGTA, *Parks v. Williamson*, No. CIV.A. 08-403-GFVT, 2009 WL 302229, at *5 (E.D. Ky. Feb. 6, 2009), just as there is no liberty interest in the mere opportunity to earn good time credits, *Abed*, supra, at 66–67.

In summary, Petitioner fails to establish that he was deprived of a liberty interest in good time credits without due process of law. The uncontroverted BOP record demonstrates that none of his many sanctions deprived him of credits, either expressly, implicitly, or by operation of law. Thus, to the extent Petitioner premises any of his 27 due process claims on deprivation of good time credits, he has failed to establish a right to any of the relief he requests.

### 2. *Petitioner was not placed in Administrative Segregation without due process*

Petitioner also claims he was deprived of a liberty interest without due process when placed in administrative segregation on 15 different occasions. Specifically, Petitioner contends that "as a result of the incident reports listed in the petition, Petitioner served seven hundred and thirty (730) days of disciplinary segregation, which he . . . has a liberty interest in , *Sandin*, [supra, 515 U.S at] 484." (Pet'r's Reply at 7). This misstates the law and mischaracterizes the relevant facts.

First, Petitioner has not shown that he his placement in administrative segregation deprived him of a liberty interest under *Sandin*. As the Second Circuit has interpreted *Sandin*, "[a] prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir.2004) (alteration in original). Whether or not

disciplinary segregation rises to this level depends on all of the circumstances of the confinement. *See Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir.2000).

> Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.' " *Id.* (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)). This Court noted in *Colon v. Howard,* 215 F.3d 227 (2d Cir.2000), that restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual. *Id.* at 231–32 & n. 5. We have also stated that SHU confinements of fewer than 101 days "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions ... or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer,* 364 F.3d at 65.

*Davis*, 364 F.3d at 64. District courts in the Second Circuit have therefore generally held that where prisoners serve between 101 and 305 days in disciplinary segregation, a liberty interest is only implicated where conditions are "more severe than the normal SHU conditions." *See, e.g., Anderson v. Marr*, No. 10–CV–818, 2011 WL 3423694, at \*9 (S.D.N.Y. Jul.18, 2011) (recommending dismissal because the plaintiff made "no mention of the conditions of the administrative segregation ... relative to ordinary prison conditions" (quotation marks omitted), *report and recommendation adopted*, No. 10 CIV. 818 SHS, 2011 WL 3585968 (S.D.N.Y. Aug. 10, 2011); *Torres v. Logan*, No. 10–CV–6951, 2011 WL 1811003, at \*4 (S.D.N.Y. May 11, 2011) (recommending dismissal because the plaintiff did not "allege any facts regarding the conditions of his confinement [and because] allegations regarding confinement for such a period of time alone do not describe an atypical or significant hardship implicating a liberty interest.") (*report and recommendation adopted* 2011 WL 3894386, at \*2 (S.D.N.Y. June 13, 2011)); *Dawkins v. Gonyea*, 646 F.Supp.2d 594, 607 (S.D.N.Y.2009) (granting dismissal due to lack of

factual allegations about the conditions of the plaintiff's 280 days in the SHU); *Sales v. Barizone*, No. 03–CV6691, 2004 WL 2781752, at *7 (S.D.N.Y. Dec. 2, 2004) (inmate's "due process claim arising out of two months' confinement in the SHU, however, cannot survive the *Sandin* test absent further allegations."); *Tookes v. Artuz*, No. 00–CV–4969, 2002 WL 484391, at *3 (S.D.N.Y. Jul. 11, 2002) (granting 12(b)(6) motion in part because notwithstanding the plaintiff's 96 days of confinement in the SHU, "the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement.").

Here, Petitioner served no more than 60 days in segregation at a time, and he has neither alleged facts nor offered evidence showing atypical and significant hardship in relation to the ordinary incidents of prison life. He asserts without explanation that he has served 730 days in administrative segregation. In reviewing the Respondent's submission, however, the Court finds that Petitioner served a total of 567 days in administrative segregation, a sum comprised of individual 15- to 60-day terms imposed after fifteen discrete disciplinary proceedings.[3] The court finds no reason to aggregate these discrete terms before determining Petitioner's liberty interests, and Petitioner offers none.[4] Because Petitioner served at most 60 days in administrative segregation and has made no allegations that the conditions of his segregated confinement were severe or atypical, he has failed to establish the deprivation of any liberty interest.

---

[3] *See* Eichenholz Decl., Exs. 4-11,17-21,24-25(documenting two 15-day terms, one 27-day term, seven 30-day terms, and five 60-day terms).

[4] At least one court has already rejected Petitioner's attempts to aggregate his SHU visits when evaluating his liberty interests in prior Section 2241 suits. *See Mitchell v. Daniels*, No. 3:06-CV-00624-DRH, 2014 WL 1246735, at *6 (S.D. Ill. Mar. 24, 2014), appeal dismissed (Oct. 21, 2014)

Moreover, even if Petitioner had a liberty interest in avoiding such confinement, he received all process due to him before those sanctions were imposed. "Prison disciplinary proceedings are not part of a criminal prosecution, and thus the full panoply of rights due a defendant in such proceedings does not apply." *Maydak v. Warden, FCI Raybrook*, 1 F. App'x 55, 56 (2d Cir.2001) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556, (1974)). As a consequence, a prison disciplinary hearing typically provides due process under the Fifth or Fourteenth Amendment if:

> (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a neutral and detached hearing body conducts the hearing; (3) the prisoner is afforded an opportunity to present evidence and call witnesses (as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals); (4) the prisoner is granted assistance, if necessary, to understand and prepare a defense; and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision.

*Homen v. Hasty*, 229 F.Supp.2d 290, 295 (S.D.N.Y.2002) (citing *Wolff*); *see also Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Moreover, there is no right to counsel or to confrontation in prison disciplinary hearings. *Wolff* at 418 U.S. 556. Judicial review of B.O.P. findings is "limited to determining whether the disposition is supported by 'some evidence,' *Sira*, 380 F.3d at 69 (citing *Wolff*), an "extremely tolerant [standard] satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.* (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir.2000)). A correctional disciplinary board may deny a prisoner's request for witnesses without immediate explanation, so long as an explanation eventually becomes part of the "administrative record." *Ponte v. Real*, 471 U.S. 491, 497-98 (1985). Reasons for rejecting witness testimony will withstand judicial review so long as they are "logically related" to preventing "undue hazards to 'institutional safety or correctional goals.' " *Id.* (quoting *Wolff*.

Finally, courts have recognized that "the refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right." *See, e.g.*, *Aikens v. Royce*, No. 14-CV-663 (KMK), 2015 WL 7758892, at \*5 (S.D.N.Y. Dec. 1, 2015) (citing *Russell v. Selsky*, 35 F.3d 55, 58–59 (2d Cir. 1994)).

Here, and as summarized below, B.O.P. records clearly establish that Petitioner received due process before he was sanctioned with disciplinary segregation. Petitioner was sanctioned with segregated confinement on 15 occasions and in each instance he received all the process he was due. The BOP exhaustively documented fair notice, thorough hearings, presentation of testimony and witnesses (and sufficient explanations and written testimony when live witness testimony was denied), regular use of staff representatives, and thorough written decisions explaining the DHO's reasoning and explaining ample evidentiary grounds for each disposition. (See Eichenholz Decl., Exs. 4-11, 17-21, 24-25). Petitioner's arguments that he did not receive these protections are belied by the record and rest on, at best, a misunderstanding of what the Due Process Clause requires in correctional disciplinary proceedings.

- For Incident Report ("IR") 2085498, Petitioner received 30 days confinement for forging documents. (Eichenholz Decl. ¶6). He received notice on February 2, 2011 of a hearing held two weeks later. (Eichenholz Decl., Ex. 4 at 1). He was provided a staff representative, Staff Counselor D. Baysore, called no witnesses, submitted a written statement, and received a seven-page dispositional report explaining his sanctions and the basis therefor. *Id.* at 1-7

- For IR 2087726, Petitioner received 30 days confinement for stealing postage (reusing stamps). (Eichenholz Decl. ¶ 7). He received notice on November 8, 2010 of a hearing held several months later. (Eichenholz Decl., Ex 5 at 1). He

received the same staff representative, submitted written and oral testimony putting forth detailed arguments concerning the reliability of prison guard testimony and qualifications for evaluating postage, and again received a detailed seven-page dispositional report. (*Id.* at 1-7). His request that one Mr. Olsheskie, a Supervisory Correctional Systems Specialist, testify on his behalf was denied on the grounds that Olsheskie had no knowledge of the matter and because Petitioner had admitted to mailing the letters in question. (*Id.* at 4).

- For IR 2090520, Petitioner received 60 days confinement for fighting with another inmate. (Eichenholz Decl. ¶ 8). He received notice on November 16, 2010 of a hearing held on November 24. (*Id.*, Ex. 6 at 1.) Petitioner again submitted statements, Baysore again served as his representative, and Petitioner received a detailed five-page dispositional report. (*Id.* at 1-5). Petitioner requested testimony from the inmate with whom he fought, but the DHO allowed only that inmate's written statement to be read in light of a history of violence and his residence in the SHU. (*Id.* at 3).

- For IR 2090779, Petitioner received 60 days for threatening an inmate and refusing an order. (Eichenholz Decl. ¶ 9). He received advanced written notice on November 16, 2010 of a hearing held on February 16, 2011. (Eichenholz Decl., Ex. 7 at 1). Baysore served as his representative, he submitted a two-page statement, and he received a detailed seven-page dispositional report. (*Id.* at 3-10). Petitioner requested testimony from another inmate regarding "all facts pertaining to the charges," but his request was denied "due to security concerns." (*Id.* at 7). The DHO considered the inmate's written statement in his absence.

(*Id.*).  Baysore served as his representative, he submitted a two-page statement, and he received a detailed seven-page dispositional report. (*Id.* at 3-10).

- For IR 2107682, Petitioner received 30 days confinement for fighting with another inmate. (Eichenholz Decl. ¶ 10).  He received over twenty-four hours' notice on January 3 of a hearing on January 4, 2011.  (Eichenholz Decl., Ex. 8 at 1.).  Baysore served as his staff representative.  Petitioner acknowledged his rights, provided testimony, and requested no witnesses.  (*Id.* at 1-4).  He received a detailed four-page dispositional report.

- For IR 2109398, Petitioner received 15 days confinement for possession of a concealed razor blade.  ((Eichenholz Decl. ¶11).  He received notice on January 11, 2011 of a hearing on January 12.  Baysore served as his staff representative, he provided written and oral testimony, and he requested two witnesses from another facility whose presence was denied as immaterial.  (Eichenholz Decl., Ex. 9 at 1-3).  He received a detailed five-page dispositional report that is accompanied by documentary and photographic evidence in the instant record. (*Id.* at 1-5, 7-16).

- For IR 2118882, Petitioner received 60 days confinement for refusing his cellmate entry and refusing an order.  (Eichenholz Decl. ¶ 12.)  He received notice on January 31, 2011 of a hearing on February 16.  (Eichenholz Decl., Ex. 10 at 1).  Baysore served as his staff representative, he testified on his own behalf, and Baysore secured written testimony for each of several inmates Petitioner selected as witnesses.  (*Id.* at 1-2).  He received a detailed 5-page dispositional report.  (*Id.* at 1-5).

- For IR 2119753, Petitioner received 15 days confinement for refusing a handcuff order. (Eichenholz Decl. ¶ 13). He received notice on February 2, 2011 of a February 16 hearing. (Eichenholz Decl., Ex. 11 at 1). Baysore served as his staff representative, Petitioner testified at the hearing, and statements were received and considered from his requested witnesses. (*Id.* at 1-2). He received a detailed 5-page disposition report. (*Id.* at 1-5).

- For IR 2114786, Petitioner received 30 days confinement for fighting with another inmate. (Eichenholz Decl. ¶ 19). He received notice on January 21, 2011 of a hearing held on August 30, 2011. (Eichenholz Decl., Ex. 17 at 1). One Mr. Zergaski served as his staff representative. (*Id.*). Petitioner provided the DHO two handwritten statements and Zergaski interviewed his requested witnesses: the inmate he was accused of fighting and an assistant warden. (*Id.* at 2-4). Neither appeared at the hearing in person (the inmate for security concerns and the associate warden for lack of relevance). (*Id.* at 3-4). A statement from the inmate was nevertheless considered as detailed in a comprehensive, 7-page dispositional report. (*Id.* at 1-7).

- For IR 2114913, Petitioner received 30 days for refusing an order and threatening a fight. (Eichenholz Decl. ¶ 20). He received notice on January 21, 2011 of a hearing held on August 30, 2011. (Eichenholz Decl., Ex. 18 at 1). Zergaski again served as his staff representative and petitioner provided statements and testimony. (*Id.* at 2-3). He requested two witnesses, statements detrimental to his claim were received from both, and for that reason neither testified. (*See id.*) Petitioner received a detailed 5-page dispositional report. (*Id.* at 1-5).

- For IR 2128212, Petitioner received 30 days for fighting. (Eichenholz Decl. ¶ 21). He received notice on February 22, 2011 of a hearing held on August 30, 2011. (Eichenholz Decl., Ex. 19 at 1). Zergaski again served as his staff representative and Petitioner provided statements and testimony. (*Id.* at 2-3). Petitioner requested various staff guards and the inmate he was accused of fighting (his cellmate) as witnesses. (*Id.*) Written statements from each were considered: both guards provided immaterial testimony, and the inmate stated that after he and Petitioner had requested that they be separated as cellmates without result they ultimately agreed to fight as means of forcing that separation. (*Id.* at 3). Petitioner received a detailed 7-page dispositional report.[5]

- For IR 2135524, Petitioner received 60 days for possession of a razorblade. (Eichenholz Decl. ¶ 22). He received notice on March 20, 2011 of a hearing held on August 30, 2011. ((Eichenholz Decl., Ex. 20 at 1). Zergaski again served as his staff representative and petitioner provided statements and testimony. (*Id.* at 2-3). Petitioner requested two inmates serve as witnesses, contending that they would corroborate his claims that the razorblade was planted by an unidentified party when his property was left unattended during cell searches. (*Id.* at 2-3). Both witnesses were interviewed and stated that they had no knowledge of the

---

[5] A close reading of Petitioner's numerous DHO reports reveals a pattern. He frequently disagreed with his cellmates and apparently fought with them as means of escaping their company. In fact, he appeared to exit disciplinary segregation only momentarily before fighting with whatever cellmate he found upon his return to a shared cell. He rarely disputed that he had physically fought the inmate in question. Instead, he tended to argue that cohabitation with a particular inmate was untenable (because of, among other things, incompatibility with his religious practice) and that fighting was a reasonable and permissible course after his requests to prison staff for removal were denied.

razorblade in question. (*Id.* at 3). Petitioner received a detailed 7-page dispositional report.

- For IR 2136763, Petitioner received 60 days for another instance of possessing a razor. ((Eichenholz Decl. ¶23). He received notice on March 13, 2011 of a hearing held on September 13. ((Eichenholz Decl., Ex. 21 at 1). A Lieutenant K. Whittaker served as his staff representative. (*Id.*). Petitioner presented a written statement and requested no witnesses. (*Id.* at 1-2). He received a detailed 4-page dispositional report documenting testimonial, photographic, and video evidence. (*Id.* at 1-4 (photographic and screen-shot evidence accompany the report in the record here)).

- For IR 2211053, Petitioner received 27 days for threatening to disclose personal information of a staff member. ((Eichenholz Decl. ¶ 26). He received notice on September 16, 2011 of a hearing held on October 18. (Eichenholz Decl., Ex. 24 at 7). One Ms. Cotterall served as his staff representative. (*Id.*). He requested a "Mr. Romero" as a witness, whose written statement ("I was not there, how could he call me as a witness[?]") the DHO considered. (*Id.* at 8). The DHO credited an associate warden's testimony that Petitioner threatened that he had committed the subject personal information to memory and would "pass it on to other inmates on the range." (*Id.* at 10). On those and other grounds, the DHO imposed the subject sanctions as described in a detailed 5-page dispositional report. (*Id.* at 7-12).

- Finally, for IR 2221715, Petitioner received 30 days confinement for tampering with a security device (smearing material on surveillance camera lens).

(Eichenholz Decl. ¶27). He received notice on October 14, 2011 of a hearing held on November 18, 2011. (Eichenholz Decl., Ex. 25 at 1). Mr. Zergaski served as his staff representative. (*Id.*). Petitioner requested the testimony of Staff Guard Wagner, who stated that she was not present on the date in question, did not understand why he called her as a witness, but had reviewed video footage showing him smearing material on the camera lens. (*Id.* at 3). Petitioner received a detailed 9-page dispositional report.

As detailed above, the B.O.P. provided Petitioner with ample process and all that the Constitution required before sanctioning him with disciplinary segregation. Petitioner's claims to the contrary are wholly unsupported. His claims to have not understood his rights, to be illiterate, and to have been diagnosed as mentally ill, are obvious attempts to trigger a right to counsel under *Vitek v. Jones*, 445 U.S. 480 (1980), and have no basis in fact and are contradicted by his extensive record of litigating similar matters. For these reasons, the Court concludes that Petitioner's placement in disciplinary segregation did not deprive him of a liberty interest and, even if it had, he first received all process and protections due to him under the Constitution. Petitioner has therefore failed to establish any of his claims as premised on that sanction.

3. *Petitioner's remaining claims are without merit*

Broadly construed, the instant petition perhaps also alleges that Petitioner was threatened with placement in a supermax facility. In the "Decision or Action You are Challenging" section of his *pro se* petition form, Petitioner references a challenge to "supermax referral." (Pet. at 2.) A written statement accompanying that form provides little elaboration, alleging only that Petitioner was "threatened with placement in a 'supermax' housing unit, known as '10-South' in

the [MCC] . . . , if Petitioner pursued his claims" for sexual assault. (*Id.* at 16). While the Supreme Court has recognized that prisoners have a liberty interest in not being placed in a supermax facility without due process, *Wilkinson v. Austin*, 545 U.S. 209, 224, (2005), the Court concludes there is no basis from which to conclude that Petitioner was deprived of such an interest prior to filing this suit. Petitioner at best alleged an unperfected conspiracy,[6] but has not " 'allege[d] with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.' " *Bertucci v. Brown*, 663 F. Supp. 447, 454 (E.D.N.Y. 1987) (quoting *Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137 (2d Cir.1964)). In any event, Petitioner is of course free to assert claims for subsequent supermax confinement without due process of law against his current custodian. His temporary stay in the Eastern District terminated long ago, and the Court sees no reason to give leave to amend in this forum.

For similar reasons Petitioner's "28th ground" states no cognizable basis for relief. There, Petitioner alleges that BOP personnel delayed disciplinary hearings on four incident reports issued during his stay at MDC Brooklyn for the purpose of "allow[ing] evidence to disappear and witness testimony to wane" and thereby preventing Petitioner from "vesting good-time credits while pending in limbo." (Pet. at 17). Again, these allegations of a conspiracy lack the requisite particularity and, as explained above, the implicit argument that unvested good-time credits trigger due process protections is erroneous.[7]

---

[6] Petitioner's traverse claims in several places that he was temporarily placed in supermax conditions after commencing this suit, (*see* Pet'r's Reply at 8, 21), but his last filing makes clear that he is no longer in BOP custody, let alone a supermax unit. Petitioner now resides in a facility at 1901 D. Street, SE, Washington, DC 2003, (ECF No. 59), a facility operated by the District of Columbia Department of Corrections, not the BOP, *see* http://doc.dc.gov/page/correctional-facilities (visited September 6, 2016).

[7] The Court has not addressed Respondent's exhaustion argument in light of Petitioner's seemingly cursory efforts to raise issues of fact regarding that topic.

## CONCLUSION

For the reasons set forth above, the petition is denied. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). This Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED**

/s/ *Sandra L. Townes*

SANDRA L. TOWNES
United States District Judge

Dated: January 25, 2017
Brooklyn, New York